UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Maria Boyd,                       )<br>              Plaintiff,      )<br>                         )<br>   -vs-                )<br>                         )<br>Kilolo Kijakazi,             )<br>Acting Commissioner of Social Security,  )<br>                         )<br>              Defendant.     )<br>_____) | Civil Action No.: 4:22-cv-03836-TER<br><br><br>ORDER |

This is an action brought pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. Section 405(g), to obtain judicial review of a "final decision" of the Commissioner of Social Security, denying Plaintiff's claim for supplemental security income (SSI). The only issues before the Court are whether the findings of fact are supported by substantial evidence and whether proper legal standards have been applied. This action is proceeding before the undersigned pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. Proc. R. 73.

## I. RELEVANT BACKGROUND

**A.     Procedural History**

Plaintiff filed an application for SSI on September 24, 2019, with an alleged onset of the same date. (Tr. 10). Her claims were denied initially and upon reconsideration. Thereafter, Plaintiff filed a request for a hearing. A hearing was held in April 2022, at which time Plaintiff and a vocational expert (VE) testified. The Administrative Law Judge (ALJ) issued an unfavorable decision on June 1, 2022, finding that Plaintiff was not disabled within the meaning of the Act. (Tr. 10-25). Plaintiff filed a request for review of the ALJ's decision, which the Appeals Council denied in September 2022, making the ALJ's decision the Commissioner's final decision. (Tr.1-3).

Plaintiff filed an action in this court in November 2022. (ECF No. 1).

**B.     Plaintiff's Background**

Plaintiff was born in November 1969, and was forty-nine years old when the application was filed. (Tr. 23). Plaintiff had past relevant work as a home attendant. (Tr. 23). Plaintiff alleges disability originally due to triple bypass heart surgery, asthma, obesity, back pain due to arthritis, neck pain, knee pain due to arthritis, wires around rib cage, diabetes, bronchitis, sinus issues, walker use, lack of education, depression, high blood pressure, acid reflux, fluid in ankles, and feet problems due to diabetes. (Tr. 69). Pertinent medical records will be discussed under the relevant issue headings.

**C.     The ALJ's Decision**

In the decision of June 1, 2022, the ALJ made the following findings of fact and conclusions of law (Tr. 10-25):

1.  The claimant engaged in substantial gainful activity during the following periods: third and fourth quarters of 2020 (20 CFR 416.920(b) and 416.971 *et seq*.).

2.  However, there has been a continuous 12-month period(s) during which the claimant did not engage in substantial gainful activity. The remaining findings address the period(s) the claimant did not engage in substantial gainful activity.

3.  The claimant has the following severe impairments: borderline intellectual functioning, depression, neuropathy, left shoulder disorder, bilateral knee impairment, obesity, asthma, and coronary artery disease status post triple bypass surgery (20 CFR 416.920(c)).

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except as limited by the following. The claimant would be able to reach overhead with the left arm no more than frequently and handle with the left hand no more than frequently. The claimant would be able to climb ladders, ropes, and scaffolds no more than occasionally. She would never be able to balance and could stoop, kneel, crouch, and crawl no more than occasionally. The claimant could never be exposed to unprotected heights, hazardous moving machinery, and humid/wet working conditions. She would need to avoid concentrated exposure to dust, odors, fumes, and other pulmonary irritants. She could never be exposed to extreme heat, extreme cold, or vibration. The claimant would be able to perform no more than non-complex written or oral instructions. She would not be able to work at a pace as determined by the speed of machinery or equipment. She would be able to handle work tasks that involve no more than a few variables from a standardized situations. The claimant would be able to interact with supervisors no more than occasionally and interact with coworkers no more than occasionally and only superficially; she would not be able to interact with the public. The claimant would be able to tolerate no more than ordinary and routine changes in work setting and duties. While on duty during an eight-hour workday, she would be on task 95 percent of the time.

6.  The claimant is unable to perform any past relevant work (20 CFR 416.965).

7.  The claimant was born on November 11, 1969, and was 49 years old, which is defined as an individual closely approaching advanced age, on the date the application was filed (20 CFR 416.963).

8.  The claimant has a limited education (20 CFR 416.964).

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969a).

11. The claimant has not been under a disability, as defined in the Social Security Act, since September 24, 2019, the date the application was filed (20 CFR

416.920(g)).

## II. DISCUSSION

Plaintiff argues the ALJ failed to explain how the RFC determination of 5% off task was reached. Plaintiff argues the ALJ failed to reconcile by explanation the RFC of frequent left reaching when Dr. McCall's opinion of occasional reaching was found persuasive, noting the ALJ expressed it was not persuasive only as to left versus right but with no explanation as to the frequency difference. Plaintiff argues the Step Five findings are unsupported where one opined job category of three may contain an unresolved conflict with the DOT and the VE. The Commissioner argues that the ALJ's decision is supported by substantial evidence.

### A.     LEGAL FRAMEWORK

#### 1.     The Commissioner's Determination–of–Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). Section 423(d)(1)(A) defines disability as: the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months. 42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting the "need for efficiency" in considering disability claims). An examiner must consider the following: (1) whether the claimant is engaged in substantial gainful activity ("SGA"); (2) whether

4

he has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[1] (4) whether such impairment prevents claimant from performing PRW;[2] and (5) whether the impairment prevents him from doing SGA.  *See* 20 C.F.R. § 404.1520.  These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis.  If a decision regarding disability may be made at any step, no further inquiry is necessary.  20 C.F.R. § 404.1520(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if he can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work.  See 20 C.F.R. Subpart P, § 404.1520(a), (b); Social Security Ruling ("SSR") 82–62 (1982).  The claimant bears the burden of establishing his inability to work within the meaning of the Act.  42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that

---

[1] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do.  The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525.  If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, he will be found disabled without further assessment.  20 C.F.R. § 404.1520(a)(4)(iii).  To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria."  20 C.F.R. § 404.1526; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

[2] In the event the examiner does not find a claimant disabled at the third step and does not have sufficient information about the claimant's past relevant work to make a finding at the fourth step, he may proceed to the fifth step of the sequential evaluation process pursuant to 20 C.F.R. § 404.1520(h).

claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that he is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981); *see generally Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) (regarding burdens of proof).

### 2. The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner [ ] made after a hearing to which he was a party." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly-tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See id.*; *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls*, 296 F.3d at 290 (*citing Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases *de novo* or resolve mere conflicts in the evidence." *Vitek v. Finch*, 438 F.2d 1157, 1157-58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir.1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings and that her conclusion is rational. *See Vitek*, 438 F.2d

at 1157-58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). Substantial evidence as a threshold is "not high;" "[u]nder the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

**B.     ANALYSIS**

**RFC**

Plaintiff argues the ALJ failed to explain how the RFC determination of 5% off task was reached. Plaintiff argues the ALJ failed to reconcile by explanation the RFC of frequent left reaching when Dr. McCall's opinion of occasional reaching was found persuasive, pointing out that the ALJ expressly noted it was not persuasive only as to left versus right but provided no explanation as to the frequency difference.

An adjudicator is solely responsible for assessing a claimant's RFC. 20 C.F.R. § 416.946(c). In making that assessment, he must consider the functional limitations resulting from the claimant's medically determinable impairments. Social Security Ruling ("SSR") 96–8p, 1996 WL 374184, at *2. This ruling provides that: "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96–8, *7. "The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Id.* Additionally, " 'a necessary predicate to engaging in a substantial evidence review is a record of the basis for the ALJ's ruling,' including 'a discussion of

which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence.' " *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) (*quoting Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013)). The ALJ considers the evidence in the record as a whole when analyzing Plaintiff's claims, as does this court when reviewing the ALJ's decision. *See Craig*, 76 F.3d at 595.

After finding severe impairments of borderline intellectual functioning, depression, neuropathy, left shoulder disorder, bilateral knee impairment, obesity, asthma, and coronary artery disease status post triple bypass surgery and finding Plaintiff did not meet a Listing, but had moderate limitations in three paragraph B criteria, the ALJ found an extensive RFC:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except as limited by the following. The claimant would be able to reach overhead with the left arm no more than frequently and handle with the left hand no more than frequently. The claimant would be able to climb ladders, ropes, and scaffolds no more than occasionally. She would never be able to balance and could stoop, kneel, crouch, and crawl no more than occasionally. The claimant could never be exposed to unprotected heights, hazardous moving machinery, and humid/wet working conditions. She would need to avoid concentrated exposure to dust, odors, fumes, and other pulmonary irritants. She could never be exposed to extreme heat, extreme cold, or vibration. The claimant would be able to perform no more than non-complex written or oral instructions. She would not be able to work at a pace as determined by the speed of machinery or equipment. She would be able to handle work tasks that involve no more than a few variables from a standardized situations. The claimant would be able to interact with supervisors no more than occasionally and interact with coworkers no more than occasionally and only superficially; she would not be able to interact with the public. The claimant would be able to tolerate no more than ordinary and routine changes in work setting and duties. <u>While on duty during an eight-hour workday, she would be on task 95 percent of the time</u>.

(Tr. 35)(emphasis added). After the five percent off task finding, there is no mention of "off task" or "percent/percentage" in the RFC narrative, much less an explanation of the finding. In the conclusion, the ALJ only states: "the undersigned finds the claimant has the above residual

8

functional capacity assessment, which is supported by the opinion of State agency medical consultant Dr. McCall, that the claimant can perform a range of light work, and the report and opinion provided by psychological consultative examiner Dr. Kofoed and State agency psychological consultant Dr. Steadham, that the claimant has some cognitive and social limitations but is able to perform work that involves simple tasks in a setting with reduced social contact." (Tr. 23). There is no conclusion language or discussion about the off task percentage/breaks.[3]

There is a plethora of case law on off task percentages and what is required to support an ALJ's finding of an off task percentage. All RFC determinations are required to be supported by explanation from the evidence to the conclusion. An ALJ's RFC "assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Mascio*, 780 F.3d at 636 (citing SSR 96-8p). This requires that the ALJ "both identify evidence that supports his conclusion and 'build an accurate and logical bridge from [that] evidence to his conclusion.'" *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018)(*quoting Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016)), superseded on other grounds as recognized in *Rogers v. Kijakazi*, 62 F.4th 872, 878-80 (4th Cir. 2023). Where an ALJ renders a specific off task percentage conclusion, such as 3%, the "ALJ must explain and support that conclusion with substantial evidence;" "[m]any courts in the Fourth Circuit... require the ALJ to explain how he or she arrived at the off-task percentage." *Berry v. Comm'r*, 2022 WL 3354778, at *2 (W.D.N.C. Aug. 12, 2022)(collecting cases extensively)(finding that where the ALJ never discussed the percentage anywhere else other than the conclusory determination and the Commissioner generally argued the RFC was based on record

---

[3] For informative purposes, the state agency consultants' opinions did not discuss an off task percentage. (Tr. 87).

evidence but did not argue how the ALJ explained arrival at the percentage, it was impossible for the court to determine whether the RFC was supported by substantial evidence). "In the absence of explanation, the Court is left to pontificate on where the ALJ came up with the nine-percent figure and why this limitation adequately accounts for Plaintiff's limitations. This is the exact type of guesswork that *Mascio* and its progeny prohibit this Court from doing." *Kennedy v. Berryhill*, 2019 WL 3664936, at *4 (W.D.N.C. Aug. 6, 2019); *Bibey v. Saul*, 2020 WL 7694552, at *4 (D. Md. Dec. 28, 2020)("the decision is immutably flawed in describing how the ALJ arrived the five percent limitation based on the evidence presented. Where, as here, the off task calculation has the potential to be work preclusive"); *Keith L. v. Saul*, 2021 WL 1723084, at *2 (D. Md. Apr. 30, 2021)("Without a narrative explanation of how the evidence supports the ALJ's seemingly arbitrary conclusion that plaintiff would be off-task five percent of the workday, the Court cannot engage in meaningful substantial evidence review."); *Beth Ann O. v. Kijakazi*, 2022 WL 3360277, at *3 (D. Md. Aug. 15, 2022)(rejecting Commissioner's reliance on that there is no requirement to articulate a percentage and noting that the Fourth Circuit has regularly held a failure to explain how arrived at the specific percentage found precludes meaningful review). Further, while a specific percentage limitation may be helpful in accounting for a moderate limitation previously found in CPP, it is error to fail to explain the source of finding a specific percentage and remand was necessary for an explanation that allowed for meaningful judicial review. *Oliver v. Saul*, No. 5:19-cv-02974-RMG-KDW, 2021 WL 431735, at *16 (D.S.C. Jan. 26, 2021), *report and recommendation adopted*, 2021 WL 428849 (D.S.C. Feb. 8, 2021); *Roof v. Saul,* No. 5:19-cv-1571-MGL-KDW, 2020 WL 3549206, at *10 (D.S.C. June 23, 2020), *report and recommendation adopted*, 2020 WL 3548814 (D.S.C. June 30, 2020). In a case where the ALJ explained acceptance of one particular percentage and rejection of

a higher percentage from the record evidence, the court was able to review such finding. *Brailsford v. Saul*, No. CV 1:20-45-TLW-SVH, 2020 WL 8455073, at *18 (D.S.C. Aug. 27, 2020), *report and recommendation adopted*, 2021 WL 165087 (D.S.C. Jan. 19, 2021). In the particular facts of the instant case, the ALJ provided no explanation for the percentage limitation at issue that was found and the decision precludes meaningful judicial review. The VE testified just five more percent, twenty-four minutes more, would be work preclusive. (Tr. 55). The court cannot engage in meaningful review where the ALJ only provides a conclusion of five percent off task. Remand is appropriate where inadequacies in the ALJ's analysis frustrate meaningful review. *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015).

Reaching/Dr. McCall

Plaintiff argues the ALJ failed to reconcile by explanation the RFC of frequent left reaching when Dr. McCall's opinion of occasional reaching was found persuasive, where the ALJ expressly noted the opinion was not persuasive only as to left versus right and the ALJ provided no explanation as to the frequency difference.

The RFC as to reaching was "claimant would be able to reach overhead with the left arm no more than frequently." (Tr. 17). Nonexamining state agency consultant Dr. McCall opined Plaintiff can occasionally reach overhead bilaterally. (Tr. 84-86).

The specific discussion and explanation by the ALJ as to McCall's opinion and reaching was that the opinion was "generally persuasive," except that "normal imaging of the right shoulder does not support a limitation in reaching on the right." (Tr. 22). The frequency difference was not discussed by the ALJ. The opinion the ALJ found persuasive was for <u>occasional</u> reaching. Occasional is "very little up to one-third," a little more than/around 2 hours per workday. SSR 83-10.

"The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." SSR 96-8p at *7. Moreover, "[t]he RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." *Id.* The court cannot ascertain from the ALJ's opinion whether there is substantial evidence to support the ALJ's findings regarding the RFC and the opinions as to reaching frequency.

Resolving conflicting evidence with reasonable explanation is an exercise that falls within the ALJ's responsibility and is outside the court's scope of review. *See Mascio v. Colvin*, 780 F.3d 632, 637-40 (4th Cir. 2015). The ALJ's opinion contains internal unresolved conflicts and creates confusion over whether substantial evidence supports the RFC determination. *See Elkins v. Saul*, No. 4:20-cv-01369-TER, 2021 WL 1884747, at *12 (remanding where the court was "left to guess" about how the ALJ assigned weight to a medical opinion where there was an internal inconsistency between the ALJ's discussion of the medical opinion and the RFC). It is not the court's "role to speculate as to how the ALJ applied the law to its findings or to hypothesize the ALJ's justifications that would perhaps find support in the record." *Fox v. Colvin*, 632 Fed. Appx. 750, 755 (4th Cir. Dec. 17, 2015). "The ALJ's failure to 'build an accurate and logical bridge from the evidence to his conclusion' constitutes reversible error." *Lewis v. Berryhill*, 858 F.3d 858, 868 (4th Cir. 2017) (internal citations omitted).

Proper explanation of this issue may have a significant impact on the Commissioner's determination at other Steps. Upon remand, the ALJ should take into consideration all of Plaintiff's briefed allegations of error, and support findings with citation to substantial evidence and provide logical explanation from the evidence to the ultimate conclusions. *See Mascio v. Colvin*, 780 F.3d

632, 636 (4th Cir. 2015).

## CONCLUSION

In conclusion, it may well be that substantial evidence exists to support the Commissioner's decision in the instant case. The court cannot, however, conduct a proper review based on the record presented. Accordingly, pursuant to the power of the Court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in social security actions under sentence four of Sections 205(g) and 1631(c)(3) of the Social Security Act, 42 U.S.C. Sections 405(g) and 1338(c)(3), the Commissioner's decision is REMANDED to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings in accordance with this opinion.

January 31, 2024
Florence, South Carolina

s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge